1
2
3
4
5                   UNITED STATES DISTRICT COURT

6            FOR THE NORTHERN DISTRICT OF CALIFORNIA

7                         OAKLAND DIVISION

8

9   BERUZ JALILI,                          Case No:  C 12-5962 SBA

10            Plaintiff,                    **ORDER GRANTING IN PART
                                            MOTIONS TO DISMISS WITH
11        vs.                               LIMITED LEAVE TO AMEND**

12   FAR EAST NATIONAL BANK, a Federally    Dkt. 11, 12, 20
     Chartered Bank; SINOPAC HOLDINGS, a
13   Foreign Corporation; LIBERTY ASSET
     MANAGEMENT CORPORATION, a
14   California Corporation; TLH-REO
     MANAGEMENT, LLC, a California
15   Limited Liability Company;
     GFC SERVICE CORPORATION,
16   a dissolved California Corporation; and
     H & Q ASIA PACIFIC II, LLC, a
17   Delaware Limited Liability Company,

18            Defendants.

19

20

21        The instant action arises from a dispute between Plaintiff Beruz Jalili ("Plaintiff")

22   and several financial institutions relating to construction and other loans on various

23   properties owned by Plaintiff.  As Defendants, Plaintiff has named the following parties:

24   Far East National Bank ("the Bank"); Sinopac Holdings ("Sinopac"); Liberty Asset

25   Management Corporation ("Liberty"); TLH-REO Management, LLC ("TLH"); GFC

26   Service Corporation ("GFC"); and H & Q Asia Pacific II, LLC ("H&Q").  Plaintiff alleges

27   federal claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO")

28

and the Real Estate Settlement Procedures Act ("RESPA"), along with various supplemental state law causes of action.

This matter is before the Court on three motions:  (1) the Bank and Sinpac's motion to dismiss; (2) the Bank and Sinpac's motion to strike; and (3) Liberty, TLH, GFC and H&Q's motion to dismiss.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motions to dismiss as to Plaintiff's federal claims and declines to address Plaintiff's state law claims at this juncture.  In light of the ruling on the motion to dismiss, the Court DENIES the motion to strike as moot.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.  BACKGROUND

### A.  FACTUAL SUMMARY[1]

Plaintiff owns various properties in Berkeley, California, located at:  (1) 1311-1315 San Pablo Avenue ("the San Pablo Avenue Property"); 1043-1049 Virginia Street ("the Virginia Street Property"); and 1348A, 1348B, 1350A and 1350B Rose Street ("the Rose Street Property").  Compl. ¶ 13, 14, 18.  Plaintiff co-owns the Rose Street Property with his sister, who is not a party to this action.  Id. ¶ 18.

Plaintiff's financial relationship with the Bank began on or about December 5, 2005, when he obtained a $100,000 line of credit secured by the San Pablo Avenue Property.  Id. ¶ 13.  Thereafter, Plaintiff secured additional loans from the Bank.  On May 30, 2007, he obtained a $2.25 million construction loan to develop condominiums at the Virginia Street Property.  Id. ¶¶ 15-16.  Later, on July 13, 2007, Plaintiff obtained a $1.21 million construction loan for a development project at the Rose Street Property.  Id. ¶¶ 19-20.

Due to the impact of the economic recession on the San Francisco Bay Area real estate market in late 2008, Plaintiff and the Bank realized that development project at the Virginia Street Property was "under water," i.e., the amount of the loan exceeded the value

---

[1] The following summary is taken from allegations of the Complaint, which, for purposes of these motions, are accepted as true.

of the finished condominiums.  Id. ¶¶ 25-26.  As such, the Bank extended the term of the construction loans, as well as the $100,000 line of credit, so that he could proceed with the development.  Id. ¶¶ 28-32.  Plaintiff claims that he agreed to complete his real estate projects based on the Bank's representation that it would provide long-term financing.  Id. ¶ 34.

In December 2009, Plaintiff and the Bank agreed to roll Plaintiff's existing loans into two new ones:  Promissory Note A in the amount of $2.755 million; and Promissory Note B in the amount of $869,543.  Id. ¶ 38.  The Bank represented to Plaintiff that "Promissory Note B was to be written off[.]"  Id. ¶ 45.  According to Plaintiff, the Bank used the two new loans and related representations as a means to induce him to continue with the projects and to provide more real property as security so that the Bank could later transfer or sell the loans on the open market after the projects were completed.  Id. ¶ 43.

In February 2012, the Bank transferred Promissory Note A and Promissory Note B to its Stressed Asset Division.  Id. ¶ 45.  Following the transfer, the Bank informed Plaintiff "for the first time—and contrary to prior representations—that [the Bank] was not going to further extend or modify the loans represented by Promissory Note A or Promissory Note B."  Id.  Plaintiff was also told that he could "buy out" the obligations under both notes for $1.7 million.  Id.

On a date not specified in the pleadings, the Bank sold Promissory Note A and Promissory Note B to Liberty at less than fair market value for $1.5 million.  Id.  ¶ 47.  Plaintiff claims that the Bank sold the property to Liberty so that both of them could share in the profit realized from the eventual sale of Plaintiff's properties.  Id. ¶ 47.  A few weeks later, Liberty sold the notes to TLH for $1.7 million.  Id.

**B.    PROCEDURAL HISTORY**

On November 21, 2012, Plaintiff filed the instant action against the Bank, Sinopac, Liberty, TLH, GFC and H&Q.[2]  The Complaint alleges eight claims for relief for: (1) Fraud; (2) Misrepresentation; (3) violation of RICO; (4) Promissory Estoppel; (5) Breach of Contract; (6) Reformation; (7) Breach of Statutory Notice (RESPA) Obligations; and (8) an Accounting.

The Bank and Sinopac have jointly filed two motions, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and a motion to strike under Rule 12(e). Separately, Liberty, TLH, GFC and H&Q have filed a Rule 12(b)(6) motion to dismiss.[3] Plaintiff and Defendants timely filed their opposition and reply briefs, respectively. The matter is now ripe for adjudication.

## II.    <u>LEGAL STANDARD</u>

Pleadings in federal court actions are governed by Federal Rule of Civil Procedure 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Rule 12(b)(6) "tests the legal sufficiency of a claim." <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint may be dismissed under Rule 12(b)(6) for failure to state a cognizable legal theory or insufficient facts to support a cognizable legal theory.  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).  "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007).  The court is to "accept all factual allegations in the complaint as true and construe

---

[2] Sinopac is the parent company of the Bank.  <u>Id.</u> ¶ 3.  In addition, Sinopac and H&Q are allegedly alter egos of the Bank.  <u>Id.</u> ¶ 10.  GFC is alleged to be the servicing agent for TLH on Promissory Note A and Promissory Note B.  <u>Id.</u> ¶ 46.

[3] The motions to dismiss present largely identical arguments, and therefore, will be discussed together.

the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint must afford the defendants with "fair notice" of the claims against them, and the grounds upon which the claims are based. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Where a complaint or claim is dismissed, "[l]eave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." Knappenberger v. City of Phoenix, 566 F.3d 936, 942 (9th Cir. 2009).

## III.   DISCUSSION

### A.   RICO

RICO provides for civil liability for "'[a]ny person injured in his business or property by reason of a violation of section 1962.'" Beck v. Prupis, 529 U.S. 494, 495 (2000) (quoting 18 U.S.C. § 1964(c)). RICO contains three substantive subsections, which are set forth in 18 U.S.C. § 1962(a), (b) and (c). The Complaint purports to state a claim under each of these subsections. See Compl. ¶¶ 61-67. The Court discusses each claim, in turn.

#### 1.   18 U.S.C. § 1962(a) & (b)

Section 1962(a) prohibits acquiring, establishing or operating "an enterprise" with income derived "from a pattern of racketeering activity or through collection of an unlawful debt." 18 U.S.C. § 1962(a). To state a claim under § 1962(a), Plaintiff must allege facts establishing the following: (1) a person receives income derived directly or indirectly from a pattern of racketeering activity or unlawful debt; (2) that person uses or invests, directly or indirectly, any part or proceeds of such income in the acquisition of any interest in, or the establishment or operation of any enterprise; and (3) that enterprise is engaged in or its

activities affect interstate or foreign commerce.  United States v. Robertson, 15 F.3d 862, 868 (9th Cir. 1994), rev'd on other grounds by 514 U.S. 669 (1995).  In addition, a plaintiff "must allege that the investment of racketeering income was the proximate cause of its injury."  Sybersound Records Inc. v. UAV Corp., 517 F.3d 1137, 1149 (9th Cir. 2008).

Section 1962(b) provides:  "It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S.C. § 1962(b) (emphasis added).  To bring a claim under this provision, "plaintiff must allege that 1) the defendant's activity led to its control or acquisition over a RICO enterprise, and 2) an injury to plaintiff resulting from defendant's control or acquisition of a RICO enterprise."  Wagh v. Metris Direct, Inc., 363 F.3d 821, 830 (9th Cir. 2003), overruled on other grounds Odom v. Microsoft Corp., 486 F.3d 541, 551 (9th Cir. 2007) (en banc).  Plaintiff must also plead "facts sufficient to assert standing" by alleging facts showing that "the alleged racketeering activity . . . [was] used to injure him," and "allege a specific nexus between the control of the enterprise and the racketeering activity."  Id.

Plaintiff's allegations in support of his claim under § 1962(a) and (b) are set forth in Paragraph 63 and 64 of the Complaint, respectively.  These paragraphs, however, are devoid of any *facts* and simply restate the language of the statute in an entirely conclusory manner.  This is precisely the type of conclusory, fact-barren pleading which the Supreme Court and Ninth Circuit have held is insufficient to avoid a motion to dismiss.  Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Cousins v. Lockyer, 568 F.3d 1063, 1067 (9th Cir. 2009) ("conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal.").  Accordingly, the Court DISMISSES Plaintiff's claims under § 1962(a) and (b), with leave to amend.

1

2.       18 U.S.C. § 1962(c)

2          Section 1962(c) makes it "unlawful for any person employed by or associated with

3   any enterprise engaged in, or the activities of which affect, interstate or foreign commerce,

4   to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs

5   through a pattern of racketeering activity or collection of unlawful debt."  To state a civil

6   RICO claim, a plaintiff must allege five elements: (1) conduct, (2) of an enterprise,

7   (3) through a pattern, (4) of racketeering activity, establishing that (5) the defendant caused

8   injury to the plaintiff's business or property.  See Sedima, S.P.R.L. v. Imrex Co., Inc., 473

9   U.S. 479, 496 (1985).

10                              a)       Pattern Requirement

11          "To state a RICO claim, one must allege a 'pattern' of racketeering activity, which

12   requires at least two predicate acts."  Clark v. Time Warner Cable, 523 F.3d 1110, 1116

13   (9th Cir. 2008) (citations omitted); 18 U.S.C. §§ 1961(5), 1962(c).  The term "racketeering

14   activity," also referred to as "predicate acts," includes "any act indictable under several

15   provisions of Title 18 of the United States Code, and includes the predicate acts of mail

16   fraud, wire fraud and obstruction of justice."  Sanford v. MemberWorks, Inc., 625 F.3d

17   550, 557 (9th Cir. 2010).

18          "[W]hile two predicate acts are required under the Act, they are not necessarily

19   sufficient."  Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir. 2004).  Rather, "[a] 'pattern' of

20   racketeering activity also requires proof that the racketeering predicates are related and

21   'that they amount to or pose a threat of continued criminal activity.'"  Id. (quoting in part

22   H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989)).  In H.J., the Supreme

23   Court explained the "continuity" requirement as follows:

24                  Continuity is both a closed and open ended concept, referring
                    either to a closed period of repeated conduct, or to past conduct
25                  that by its nature projects into the future with a threat of
                    repetition . . . .  A party alleging a RICO violation may
26                  demonstrate continuity over a closed period by proving a series
                    of related predicates extending over a substantial period of time.
27                  Predicate acts extending over a few weeks or months and
                    threatening no future criminal conduct do not satisfy this
28                  requirement:  Congress was concerned in RICO with long term
                    criminal conduct.

H.J., 492 U.S. at 241-42.  "Thus, in order to allege open-ended continuity, a RICO plaintiff must charge a form of predicate misconduct that by its nature projects into the future with a threat of repetition."  Turner, 362 F.3d at 1229.  "Conversely, an alleged series of related predicates not extending over a substantial period of time and not threatening future criminal conduct fails to charge closed-ended continuity."  Id.

Here, the Complaint does not specifically identify any predicate acts.  Rather, the pleadings merely allege that "Defendants used the interstate mails and wires to further its pattern of racketeering activity, in violation of federal law, including by communicating with Plaintiff and each other."  Compl. ¶ 64.  These conclusory allegations fail to comport with the heightened pleading standards of Rule 9(b), which apply, where, as here, the RICO predicate acts are based on fraudulent conduct.  Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065-66 (9th Cir. 2004).  To comport with Rule 9(b), plaintiffs must plead with particularity the time, place, and manner of each act of fraud, as well as the role of each defendant in each scheme.  Id.  Since the Complaint fails to allege such facts, Plaintiff's RICO claim must be dismissed.  Id. (affirming dismissal of RICO claim which identified the parties involved but did not specify the content of the communications); Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392-393 (9th Cir. 1988) ("The allegations of predicate acts in the complaint concerning those elements of RICO are entirely general; no specifics of time, place, or nature of the alleged communications are pleaded.  This is a fatal defect under Fed. R. Civ. P. 9(b)").

In his opposition, Plaintiff contends that the requisite predicate acts are alleged in Paragraph 65 of the Complaint, which avers that "[t]he predicate acts that establish the requisite racketeering activity . . . include[] the acts and omissions that led to the Consent Order."  Compl. ¶ 65.  The Consent Order was entered into by the United States Comptroller of the Currency ("Comptroller") and the Bank on or about March 9, 2010, following the Comptroller's stated intention to initiate cease and desist proceedings against the Bank under 12 U.S.C. § 1818(b) "for unsafe and unsound banking practices relating to supervision of the Bank[.]"  Compl. Ex. J (Stip. and Consent to the Issuance of a Consent

Order ¶ 1), Dkt. 1 at 136.  Setting aside that there is no reference in the Consent Order to any mail or wire fraud or any other predicate acts, Plaintiff has made no showing that such order relates to any of the specific conduct that forms the basis of this action.  Moreover, even if the Consent Order were sufficient to establish the existence of two or more predicate acts—which it clearly is not—Plaintiff has alleged no facts to satisfy the continuity requirement.  These deficiencies compel the dismissal of Plaintiff's RICO claim.  See Lacey v. Maricopa Cnty., 693 F.3d 896, 939 (9th Cir. 2012) ("We agree with the district court that [plaintiff] offers only vague allegations with no factual support that the defendants engaged in any of the requisite predicate crimes.  This 'unadorned, the-defendant-unlawfully-harmed-me accusation' is insufficient to survive a motion to dismiss.").

>                 **b)      Enterprise**

An "enterprise" for purposes of RICO is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  Under this definition, an enterprise can be a single individual, partnership, corporation, association, or other legal entity.  Odom, 486 F.3d at 548.  The Supreme Court has defined an associated-in-fact enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct."  United States v. Turkette, 452 U.S. 576, 583 (1981).  "To establish the existence of such an enterprise, a plaintiff must provide both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'"  Odom, 486 F.3d at 552 (quoting Turkette, 452 U.S. at 583); Walter v. Drayson, 538 F.3d 1244, 1249 (9th Cir. 2008) ("there must be an element of direction.").

It is unclear from the Complaint whether Plaintiff is alleging that the enterprise is an individual, partnership, corporation, association, or other legal entity.  See Compl. ¶ 63.  To the extent that Plaintiff is attempting to allege an associated-in-fact enterprise, his allegations are entirely conclusory.  For example, the Complaint avers that Defendants "participated in, or have been associated with, an enterprise," but neglects to present any

1  facts demonstrating each Defendant's role in the enterprise.  See Reves v. Ernst & Young,

2  507 U.S. 170, 183 (1993) (stating that a party is not liable under § 1962 "unless one has

3  participated in the operation or management of the enterprise itself").  There also are no

4  factual allegations demonstrating the existence of "an ongoing organization" in which

5  "various associates function as a continuing unit."  Odom, 486 F.3d at 552 (internal

6  quotations and citation omitted).  Given these conclusory allegations, Plaintiff's RICO

7  claim must be dismissed.  See Elliott v. Foufas, 867 F.2d 877, 881 (5th Cir. 1989) ("In

8  order to avoid dismissal for failure to state a claim, a [RICO] plaintiff must plead specific

9  facts, not mere conclusory allegations, which establish the existence of an enterprise").

10      In sum, the Court finds that Plaintiff has failed to allege facts sufficient to state a

11  claim under § 1962(c).  Accordingly, the Court DISMISSES said claim with leave to

12  amend.

13      **B.    RESPA**

14      Plaintiff's seventh claim alleges that Defendants violated RESPA's notice

15  requirements, which apply specifically to "federally related mortgage loans."  See 12

16  U.S.C. § 2605(b).[4]  The definition of "federally regulated mortgage loans" specifically

17  excludes "temporary financing such as a construction loan[.]"  See 12 U.S.C. § 2602(1).

18  Commercial loans also are excluded from the purview of RESPA.  See Johnson v. Wells

19  Fargo Home Mortg., Inc., 635 F.3d 401, 421 (9th Cir. 2011).  Here, Plaintiff concedes that

20  the loans at issue are construction and commercial loans.  Pl.'s Opp'n at 14.  Because

21  RESPA creates no duties with respect to such loans, the Court GRANTS Defendants'

22  motion to dismiss Plaintiff's seventh claim under RESPA.  Such dismissal is with

23  prejudice, as further amendment would be futile.

24

25

26

27      [4] This section provides that:  "Each servicer of any federally related mortgage loan
shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of
28  the loan to any other person."  12 U.S.C. § 2605(b)(1).

C.    **REMAINING STATE LAW CLAIMS**

Federal court jurisdiction is limited to claims raising federal questions or involving parties with diverse citizenship.  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).  In this case, Plaintiff predicates this Court's subject matter jurisdiction on his federal RICO and RESPA claims.  See 28 U.S.C. § 1331.  The Court's jurisdiction over the remaining state law claims is based on supplemental jurisdiction.  Id. § 1367(a).

At this juncture, the Court has dismissed Plaintiff's federal claims, and is permitting leave to amend only as to the RICO claim.  Because it presently is unclear whether Plaintiff can state a cognizable federal claim by amending his Complaint to allege facts demonstrating a plausible RICO claim, the Court will not engage at this time in an analysis of whether Plaintiff has plead cognizable state law claims.  See Gusenkov v. Washington Mut. Bank, FA, No. C 09-04747 SI, 2010 WL 2612349, *6 (N.D. Cal. June 24, 2010) (granting motion to dismiss federal claims and declining to consider viability of state law claims pending plaintiff's amendment of the federal claims).

The Court advises Plaintiff that if he does not timely amend his Complaint within the time period specified below or is unable to amend his Complaint to state a cognizable federal claim under RICO, the Court will dismiss his RICO claim with prejudice and decline to exercise supplemental jurisdiction over the remaining state law claims.  See 28 U.S.C. § 1367(c)(3); Ove v. Gwinn, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related state-law claims once it has dismissed all claims over which it has original jurisdiction.").

IV.    **CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.    Defendants' motions to dismiss are GRANTED IN PART as to Plaintiff's third claim under RICO and seventh claim under RESPA.  Plaintiff is granted leave to amend his RICO claim to rectify the deficiencies discussed above.  The RESPA claim is dismissed with prejudice.

2.      The Bank and Sinopac's motion to strike is DENIED as moot.

3.      Plaintiff shall have until May 22, 2013 to file a First Amended Complaint,
consistent with the Court's rulings.  Plaintiff is advised that any additional factual
allegations set forth in his amended complaint must be made in good faith and consistent
with Rule 11.  The Court defers consideration of Plaintiff's supplemental state law claims
until it is determined that Plaintiff has stated a plausible federal claim.

4.      This Order terminates Docket 11, 12 and 20.

IT IS SO ORDERED.

Dated: May 1, 2013

SAUNDRA BROWN ARMSTRONG
United States District Judge