UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BERUZ JALILI,<br><br>            Plaintiff,<br><br>     vs.<br><br>FAR EAST NATIONAL BANK, a Federally Chartered Bank; SINOPAC HOLDINGS, a Foreign Corporation; LIBERTY ASSET MANAGEMENT CORPORATION, a California Corporation; TLH-REO MANAGEMENT, LLC, a California Limited Liability Company;<br>GFC SERVICE CORPORATION,<br>a dissolved California Corporation; and<br>H & Q ASIA PACIFIC II, LLC, a<br>Delaware Limited Liability Company,<br><br>            Defendants. | Case No:  C 12-5962 SBA<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Dkt. 41, 42, 43 |

      Plaintiff Beruz Jalili ("Plaintiff") brings the instant action under the Racketeer Influenced and Corrupt Organizations Act ("RICO") against Far East National Bank ("Far East"), Sinopac Holdings ("Sinopac"), Liberty Asset Management Corporation ("Liberty Asset Management"), TLH-REO Management, LLC ("TLH-REO"), GFC Service Corporation ("GFC") and H & Q Asia Pacific II, LLC ("H&Q").  The Court previously dismissed Plaintiff's sole RICO claim with leave to amend.  Plaintiff has now filed a First Amended Complaint ("FAC"), which alleges three RICO claims as well as six supplemental state law causes of action.

      The parties are presently before the Court on Defendants' respective motions to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. 41, 42, 43. Having read and considered the papers filed in connection with this matter and being fully

informed, the Court hereby GRANTS the motions and dismisses Plaintiff's RICO claims without leave to amend. The Court declines to assert supplemental jurisdiction over Plaintiff's remaining state law claims, which are dismissed without prejudice to re-filing in state court. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I.     **BACKGROUND**

   A.     **FACTUAL SUMMARY**[1]

      1.     **Plaintiff Secures Loans from Far East**

Plaintiff, a real estate developer, alleges that Defendants defrauded him in connection with real estate financing provided for his various development projects. The projects involved properties owned by Plaintiff that are referred to in the pleadings as the "San Pablo Avenue Property," the "Virginia Street Property" and the "Rose Street Property." FAC ¶¶ 13, 14, 18.

Plaintiff obtained several loans from Far East. On or about December 5, 2005, Plaintiff obtained a $100,000 line of credit, which was secured by the San Pablo Avenue Property. Id. ¶ 13. On May 30, 2007, he obtained a $2.25 million construction loan to develop mixed-use residential and commercial condominiums at the Virginia Street Property. Id. ¶¶ 15-16. Later, on July 13, 2007, Plaintiff obtained a $1.21 million construction loan for a residential condominium development project at the Rose Street Property. Id. ¶¶ 19-20.

      2.     **Negotiation of a New Loan Agreement**

In 2008, the San Francisco Bay Area real estate market experienced a downturn due to the recession. Id. ¶ 25. As a result, it became apparent to Plaintiff that the projected value of the completed mixed-use project at the Virginia Street Property was less than the balances due on his Far East loans. Id. In April 2008, Plaintiff expressed this concern to Far East, which represented that it would extend, modify or write-down the outstanding

---

[1] The following summary is taken from allegations of the FAC, which, for purposes of these motions, are accepted as true.

- 2 -

loans to reflect the actual value of the project, provided that Plaintiff would agree to complete the project.  Id.  According to Plaintiff, Far East made this offer because it feared that he would abandon the project and thereby impair the bank's collateral.  Id. ¶ 26. Plaintiff alleges that he agreed to complete the project based on Far East's representation that it would provide long-term financing.  Id. ¶ 34.

In December 2009, Plaintiff and Far East entered into a new agreement which rolled Plaintiff's existing loans into two new ones:  (1) Promissory Note A ("Note A") in the amount of $2.755 million; and (2) Promissory Note B ("Note B") in the amount of $869,543.  Id. ¶ 38.  Note A was characterized as a "performing loan" which reflected the market value of the condominiums projects.  Id. ¶¶ 35-38.  Note B was to be a "non-performing loan" which would be "written off," though still maintained on the books of Far East.  Id.  Plaintiff alleges that Far East used the two new loans and related representations as a means to induce him to continue with the projects and to provide additional real property (i.e., the San Pablo Property) as security so that Far East could later transfer or sell the loans on the open market at a discount after the projects were completed.  Id. ¶¶ 37, 43.

At the time Plaintiff was negotiating with Far East regarding the new loan agreement, Far East was under investigation by the United States Comptroller of the Currency ("Comptroller") for "unsafe and unsound banking practices."  Id. ¶ 39.  The investigation culminated in Far East and the Comptroller entering into a Stipulation and Consent to the Issuance of a Consent Order ("Consent Order"), dated March 9, 2010.  Id. ¶ 40.  The Consent Order "fundamentally alter[ed] the way [Far East] made and handled secured loans, including those issued and outstanding to Plaintiff."  Id. ¶ 42.  Plaintiff claims that he was unaware and otherwise not informed of the matter involving the Comptroller.  Id. ¶ 40.

### 3. Promissory Notes Sold

In February 2011, Far East declared the notes to be in default due to Plaintiff's failure to pay the property taxes on his properties.  Id. ¶ 44.  In response, Plaintiff met with "representatives" of Far East and explained that the property taxes were to be paid from the

loan reserves created pursuant to their new loan agreement. Id. Far East agreed with Plaintiff and agreed to pay the property taxes at or before the notes' maturity. Id.

In February 2012, Far East transferred Note A and Note B to its Stressed Asset Division. Id. ¶ 45. Following the transfer, Far East informed Plaintiff "for the first time—and contrary to prior representations—that [Far East] was not going to further extend or modify the loans represented by … Note A or … Note B." Id. Plaintiff was also told that he could "buy out" the obligations under both notes for $1.7 million. Id.

In late February 2012, while Plaintiff was attempting to arrange financing to purchase the notes, Far East sold Note A and Note B to Liberty Asset Management for $1.5 million, "well below the known market value." Id. ¶ 63. A week later, Liberty Asset Management sold the notes to TLH-REO for $1.7 million. Id. ¶ 64. Two weeks later on March 5, 2012, Liberty Management Asset dissolved its corporate status. Id. ¶ 65. However, Far East allegedly used proceeds from the sale of Note A and Note B to create a "new" Liberty Management Asset to act as a "middle-man between Far East National and TLH-REO in the scheme to deliberately undervalue notes secured by distressed assets and to sell them at a discount so that instant 'profits' could be realized by Defendants through the acquisition and control of Liberty Asset Management." Id. ¶ 75.

### B. PROCEDURAL HISTORY

On November 21, 2012, Plaintiff filed the instant action against Far East, Sinopac, Liberty Asset Management, TLH-REO, GFC and H&Q[2] alleging eight claims for relief for: (1) Fraud; (2) Misrepresentation; (3) violation of RICO; (4) Promissory Estoppel; (5) Breach of Contract; (6) Reformation; (7) Breach of Statutory Notice (Real Estate Settlement Procedures Act ("RESPA")) Obligations; and (8) an Accounting. Far East and Sinopac on the one hand, and Liberty Asset Management, TLH-REO, GFC and H&Q on the other, filed separate motions to dismiss. On May 1, 2013, the Court granted

---

[2] The FAC alleges that Sinopac is the parent company of Far East, and that Sinopac and H&Q are alter egos of Far East. Id. ¶¶ 3, 10. GFC is alleged to be the servicing agent for TLH-REO on Note A and Note B. Id. ¶ 46.

Defendants' motions, in part, as to Plaintiff's RICO claim, which was dismissed with leave to amend, and the RESPA claim, which was dismissed with prejudice. Jalili v. Far East Nat. Bank, No. C 12-5962 SBA, 2013 WL 1832648 (N.D. Cal. May 1, 2013) ("5/13/13 Order"), Dkt. 36. The Court declined to address Plaintiff's supplemental state law causes of action until it was clear that Plaintiff had alleged a plausible federal claim.

On May 22, 2013, Plaintiff filed his FAC, which now alleges three separate RICO claims (third, fourth and fifth claims for relief) for violations of 18 U.S.C. § 1962(a), (b) and (c). The remaining causes of action for fraud, promissory estoppel, breach of contract, reformation and an accounting are based on state law. Far East and Sinopac have filed a motion to dismiss and motion to strike. Dkt. 42, 43. Liberty Asset Management, TLH-REO, GFC and H&Q have separately filed a motion to dismiss the FAC. Dkt. 41. The motions are fully briefed and are ripe for adjudication.[3]

## II.  LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In deciding a Rule 12(b)(6) motion, courts generally "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009). The complaint must afford the defendants with "fair notice" of the claims against them, and

---

[3] In light of the Court's decision to dismiss Plaintiff's claims, the Court need not reach the motion to strike, which is denied as moot.

the grounds upon which the claims are based.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  Where a complaint or claim is dismissed, "[l]eave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts."  Knappenberger v. City of Phoenix, 566 F.3d 936, 942 (9th Cir. 2009).

## III. DISCUSSION

### A. RICO

RICO provides a private right of action for "'[a]ny person injured in his business or property by reason of a violation of section 1962.'"  Beck v. Prupis, 529 U.S. 494, 495 (2000) (quoting 18 U.S.C. § 1964(c)).  Under 18 U.S.C. § 1962, it is illegal to:  (1) invest the proceeds of a "pattern of racketeering activity" or the "collection of an unlawful debt" in an "enterprise" that effects interstate commerce, 18 U.S.C. § 1962(a); (2) acquire or maintain an interest or control in any such "enterprise" through a "pattern of racketeering activity" or the "collection of an unlawful debt," id. § 1962(b); (3) conduct the affairs of an "enterprise" through a "pattern of racketeering activity" or the "collection of an unlawful debt," id. § 1962(c); and (4) conspire to engage in any of the foregoing acts, id. § 1962(d).

All claims under § 1962 require "proof of a 'pattern of racketeering activity[.]'" H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 232 (1989).  "Racketeering activity" is defined to encompass a variety of criminal acts identified in 18 U.S.C. § 1961(1).  Sanford v. MemberWorks, Inc., 625 F.3d 550, 557 (9th Cir. 2010).  To satisfy the "pattern" requirement, there must be at least two acts of racketeering activity within a ten-year time period.  18 U.S.C. § 1961(5).   As an alternative to demonstrating a pattern of racketeering activity, a plaintiff may rely on proof of the collection of an unlawful debt.  See 18 U.S.C. § 1962(a)-(c).  RICO defines "unlawful debt" as a debt resulting from illegal "gambling activity" or one that is unenforceable because it is "usurious."  18 U.S.C. § 1961(6); Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n, 840 F.2d 653, 665-66 (9th Cir. 1988).

As noted, the FAC alleges violations of § 1962(a), (b) and (c).  The Court addresses the sufficiency of each claim, seriatim.

### 1. 18 U.S.C. § 1962(a)

To state a claim under § 1962(a), a plaintiff must allege facts establishing the following:  (1) a person received income derived directly or indirectly from a pattern of racketeering activity or unlawful debt; (2) that person used or invested, directly or indirectly, any part or proceeds of such income in the acquisition of any interest in, or the establishment or operation of any enterprise; and (3) that the enterprise was engaged in or its activities affect interstate or foreign commerce.  United States v. Robertson, 15 F.3d 862, 868 (9th Cir. 1994), rev'd on other grounds by 514 U.S. 669 (1995).  In addition, a civil RICO plaintiff "must allege that the investment of racketeering income was the proximate cause of its injury."  Sybersound Records Inc. v. UAV Corp., 517 F.3d 1137, 1149 (9th Cir. 2008).

#### *a)* *Pattern of Racketeering Activity*

The threshold question presented is whether Plaintiff has sufficiently alleged racketeering activity.  The FAC alleges that Defendants engaged in the following racketeering activity:  (1) the mailing of Note A and Note B on or about December 28, 2009; (2) the mailing of unspecified "written demands" regarding the payment of property taxes which, in fact, were to be paid from the loan reserves; and (3) the "unsound banking practices" that formed the basis of the Comptroller's Consent Order.  FAC ¶ 68A-C.  Defendants argue that Plaintiff's allegations are insufficient to establish the commission of any predicate acts cognizable under RICO.  Far East Mot. at 6-7.  Plaintiff does not directly respond to Defendants' arguments, and instead, merely asserts, in an entirely conclusory manner, that his allegations are sufficient.  Pl.'s Opp'n at 11-12.

The first two predicate acts cited by Plaintiff appear to present claims of mail fraud.  FAC ¶ 68A-B.  To plead mail fraud, a plaintiff must allege: (1) the formation of a scheme to defraud; (2) the use of the United States mail or wire in furtherance of the scheme to defraud; and (3) the specific intent to deceive or defraud.  Schreiber Distrib. Co. v. Serv-

1  Well Furniture Co., Inc., 806 F.2d 1393, 1399-1400 (9th Cir. 1986).  Under Rule 9(b), a
2  plaintiff must plead the factual circumstances constituting mail fraud with particularity.
3  Sanford, 625 F.3d at 557-58 (applying Rule 9(b) to RICO claims predicated on mail and
4  wire fraud).  To avoid dismissal under Rule 9(b), the pleadings must "state the time, place,
5  and specific content of the false representations as well as the identities of the parties to the
6  misrepresentation."  Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)
7  (quoting Schreiber Distrib., 806 F.2d at 1401).
8         The FAC's allegations of mail fraud fail to comport with Rule 9(b).  In particular,
9  the pleadings do not allege who made any of the allegedly false representations regarding
10 the extended financing which culminated in Note A and Note B, precisely when those
11 representations were made, or who prepared and/or mailed Note A and Note B.  See FAC
12 ¶¶ 33-38.  The failure to allege such essential facts is fatal to a claim for mail fraud, and by
13 extension, Plaintiff's claim under RICO.  See Sanford, 625 F.3d at 558-59 (holding that the
14 failure to allege specific facts to substantiate plaintiff's claim of wire and mail fraud
15 warranted denial of leave to amend to allege a RICO violation).  Plaintiff's related claim
16 that Far East engaged in mail fraud by wrongly demanding the payment of property taxes
17 suffers from the same lack of specificity.
18        Plaintiff's reliance on the Comptroller's Consent Order to show a pattern of
19 racketeering activity is similarly misplaced.  The Court previously found that the Consent
20 Order did not find or suggest that Far East engaged in racketeering activity.  5/1/13 Order at
21 8-9.  In his opposition, Plaintiff argues that the Consent Order shows that Far East "had
22 problems valuing distressed assets," which allegedly is probative of Far East's alleged
23 scheme to defraud.  Pl.'s Opp'n at 10.  However, whether Far East had general difficulty in
24 valuing assets does not show that *in this particular instance* it intentionally undervalued
25 Note A and Note B in order to defraud Plaintiff.  But even if it did, the FAC does not allege
26 nor does Plaintiff explain in his opposition which of the criminal statutes enumerated in 18
27 U.S.C. § 1961(1) were violated by Far East's purported undervaluation of the notes.
28

Even if Plaintiff had sufficiently alleged racketeering activity, he fails to allege fact to satisfy the pattern requirement. As noted, there must be at least two predicate acts to establish a "pattern" of racketeering activity. 18 U.S.C. § 1961(5). "However, while two predicate acts are required under the Act, they are not necessarily sufficient." Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir. 2004). Rather, the pattern element also requires a showing of continuity; that is, "that the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity." Id. The continuity requirement presents "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." H.J., 492 U.S. at 239.

In an apparent attempt to satisfy the continuity requirement, the FAC alleges that Defendants formed a scheme to profit from the purchase and sale of foreclosed properties, and that such scheme "was not a one-time shot" and "threatens to continue into the future." FAC ¶ 69, 76. No facts are alleged in the FAC to support these conclusory allegations. The lack of such facts requires the dismissal of Plaintiff's RICO claim for failure to satisfy the continuity requirement. See Howard v. America Online, Inc., 208 F.3d 741, 750-51 (9th Cir. 2000) (upholding dismissal of RICO claim where the allegations regarding closed-ended and open-ended continuity were conclusory).

### b)   *Unlawful Debt*

Plaintiff's alternative allegation that Defendants derived income from an "unlawful debt" is likewise insufficient. FAC ¶¶ 63-64. As noted, RICO defines "unlawful debt" as a debt resulting from illegal "gambling activity" or one that is unenforceable because it is "usurious." 18 U.S.C. § 1961(6). Here, Plaintiff has not alleged facts consistent with RICO's definition of an unlawful debt. Rather, the FAC merely alleges that Far East's failure to "write off" the balance due on Note B "constitutes in and of itself the collection of an unlawful debt in violation of RICO section 1962(a). FAC ¶ 67. Since Plaintiff does not allege that Note B is usurious or is a gambling debt, the debt reflected in Note B does not qualify as an unlawful debt for purposes of § 1962(a).

### c) *Proximate Cause*

"A plaintiff must show that the defendant's RICO violation was not only a 'but for' cause of his injury, but that it was a proximate cause as well." Oki Semiconductor Co. v. Wells Fargo Bank, N.A., 298 F.3d 768, 773 (9th Cir. 2002). To adequately allege proximate cause, a "plaintiff seeking civil damages for violation of § 1962(a) must allege facts tending to show that he or she was injured by *the use or investment of racketeering income*." Sybersound, 517 F.3d at 1149 (internal quotations omitted, emphasis added). Alleging that a defendant reinvested "proceeds from alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate causation." Id.[4] Rather, a plaintiff must allege an injury that is "separate and distinct from the injury flowing from the predicate act." Id.

The FAC alleges that Plaintiff was "directly injured" by Defendants' fraudulent scheme to "deliberately undervalue [his] property," which, in turn, ostensibly allowed Defendants to sell his loans at a profit. FAC ¶ 69. He also claims that Far East used its share of those profits to capitalize and form a "'new' Liberty Asset Management Corporation … on March 22, 2012." Id. ¶ 65. These allegations are insufficient to satisfy the proximate cause requirement. The injury suffered by Plaintiff allegedly occurred upon the sale of the notes at less than fair market value. Because the injury identified resulted directly from Defendants' commission of the predicate acts, it is not "separate and distinct from them." Sybersound, 517 F.3d at 1149. With regard to Far East's funding of a "new" Liberty Asset Management Corporation, Plaintiff fails to allege any facts showing how he was injured by the formation of that entity. In any event, that entity was formed *after* he had already been injured by the sale of notes.

---

[4] Were it otherwise, "almost every pattern of racketeering activity by a corporation would be actionable under § 1962(a), and the distinction between § 1962(a) and § 1962(c) would be meaningless." Westways World Travel Corp. v. AMR Corp., 182 F. Supp. 2d 952, 960 (C.D. Cal. 2001) (internal qutations omitted).

- 10 -

Tellingly, Plaintiff does not directly respond to Defendants' contention that his injury was not proximately caused by their alleged use or investment of income from racketeering activities. Instead, Plaintiff's only response is that, under Sybersound, he need only allege a "direct injury due to Defendants' RICO violations." Pl.'s Opp'n at 9. But Sybersound states the precise opposite. Moreover, Plaintiff erroneously conflates § 1962(a) with § 1962(c). Whereas a claim under § 1962(a) requires that the injury be caused by the use or investment of racketeering income, Nugget Hydroelectric, 981 F.2d at 437, a claim under § 1962(c) requires only "some direct relation between the injury asserted and the injurious conduct alleged." Rezner v. Bayerische Hypo-Und Vereinsbank AG, 630 F.3d 866, 873 (9th Cir. 2010). Thus, for purposes of § 1962(a), it is inapposite whether Plaintiff was injured by the RICO violations; rather, he must show an injury resulting from Defendants' *use or investment* of proceeds from a pattern of racketeering activity or the collection of an unlawful debt in an enterprise. Since Plaintiff has failed to allege facts consistent with that requirement, his § 1962(a) claim is subject to dismissal.

### d) *Interstate Commerce*

Lastly, there are no facts alleged in the FAC showing that the enterprise used or acquired through a pattern of racketeering activity or the collection of an unlawful debt was engaged in or its activities affected interstate or foreign commerce. Though Defendants pointed out this deficiency in their motion, see Far East Mot. at 7, Plaintiff fails to address this argument in his opposition. The Court construes Plaintiff's lack of response as a concession that Defendants' contention is meritorious.

### e) *Summary*

In sum, the Court finds that Plaintiff's claim for violation of § 1962(a) is infirm based on his failure to allege that any Defendant received income derived directly or indirectly from a pattern of racketeering activity or unlawful debt, that he was injured by Defendants' use or investment of racketeering income in an enterprise, or that the enterprise used or acquired by Defendants was engaged in or affected interstate or foreign commerce. For these reasons, Plaintiff has failed to state a claim for violation of § 1962(a).

### 2. 18 U.S.C. § 1962(b)

Section 1962(b) provides: "It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). To state a claim under § 1962(b), "plaintiff must allege that 1) the defendant's activity led to its control or acquisition over a RICO enterprise, and 2) an injury to plaintiff resulting from defendant's control or acquisition of a RICO enterprise." Wagh v. Metris Direct, Inc., 363 F.3d 821, 830 (9th Cir. 2003), overruled on other grounds, Odom v. Microsoft Corp., 486 F.3d 541, 551 (9th Cir. 2007).

In support of his § 1962(b) claim, Plaintiff relies on the same conduct and injury alleged in his § 1962(a) claim. Compare FAC ¶¶ 67, 68A-C, 69 with id. ¶ 77, 78A-C, 79. Thus, for the reasons discussed above, Plaintiff's failure to establish either a pattern of racketeering activity or the collection of unlawful debt also is dispositive of his § 1962(b) claim. See Sever v. Alaska Pulp Co., 978 F.2d 1529, 1535 (9th Cir. 1992) (affirming dismissal of § 1962(b) claim based on the plaintiff's failure to allege a pattern of racketeering activity). Nor has Plaintiff alleged that he suffered an injury attributable to Defendants' control or acquisition of a RICO enterprise. Like his § 1962(a) claim, Plaintiff again alleges that he was injured by Far East's sale of Note A and Note B at less than fair market value. FAC ¶ 79. He alleges no injury resulting from the control or acquisition of an enterprise. Accordingly, the Court finds that Plaintiff has failed to state a claim for violation of § 1962(b).

### 3. 18 U.S.C. § 1962(c)

Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." To state a civil claim under § 1962(c), a plaintiff must allege five elements: (1) conduct, (2) of an

enterprise, (3) through a pattern, (4) of racketeering activity, establishing that (5) the defendant caused injury to the plaintiff's business or property.  See Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985).

### a) Racketeering Activity/Unlawful Debt

The Court previously dismissed Plaintiff's § 1962(c) claim for failure to sufficiently allege a pattern of racketeering activity.  5/1/13 Order at 8-9.  In his FAC, Plaintiff relies on the same pattern of racketeering activity and unlawful debt allegations that are set forth in his other RICO claims.  Compare FAC ¶¶ 67, 68A-C, 69, 77, 78A-C, 79 with id. ¶ 87, 88A-C.  Thus, for the reasons set forth above, the Court finds that Plaintiff has failed to allege an essential element of a claim for violation of § 1962(c).  See Sever, 978 F.2d at 1534 ("we affirm the dismissal because we agree with the district court that [plaintiff] has failed to allege a pattern of racketeering activity, as required by both section 1962(b) and section 1962(c).").

### b) Enterprise

Plaintiff's revised allegations regarding the existence of a RICO enterprise fare no better.  An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  Odom, 486 F.3d at 548 (quoting 18 U.S.C. § 1961(4)) (internal quotation marks omitted).  "[A]n associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise."  Id. at 551.  Rather it is "a group of persons associated together for a common purpose of engaging in a course of conduct."  Id. at 552 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)) (internal quotation marks omitted).  "To establish the existence of such an enterprise, a plaintiff must provide both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.'"  Id.

In his original complaint, Plaintiff failed to specify whether the enterprise that forms the basis of his § 1962(c) claim is a legal entity or an associated-in-fact enterprise.  5/1/13 Order at 9.  The FAC now alleges that "Far East National, TLH-REO, SinoPac Holdings

and Liberty Asset Management are enterprises engaged in, or whose activities affect, interstate commerce in that it [sic] purchases and sells foreclosed properties throughout the United States." FAC ¶ 76. He additionally alleges that Liberty Asset Management was dissolved on March 5, 2012, and that Far East created a "new enterprise," also known as "Liberty Asset Management Corporation," on March 22, 2012. Id. ¶ 85. These new allegations are insufficient to rectify the deficiencies of the original complaint.

"[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001). In this case, Plaintiff has failed to allege the existence of these distinct entities. Rather, he merely states that each of the Defendants is an enterprise, which is insufficient, as a matter of law. See Rae v. Union Bank, 725 F.2d 478, 481 (9th Cir. 1984) ("If [the defendant] is the enterprise, it cannot also be the RICO defendant.").

Curiously, Plaintiff argues in his opposition that "defendants acted together in the associated-in-fact enterprise to engage in the scheme alleged." Pl.'s Opp'n at 10. Since no such allegations are presented in the FAC, Plaintiff's claim that Defendants operated an associated-in-fact enterprise is not properly before the Court. See Schneider v. Calif. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("'new' allegations contained in the [plaintiff]'s opposition . . . are irrelevant for Rule 12(b)(6) purposes."). Moreover, as the Court explained in its earlier order, a plaintiff alleging the existence of an associated-in-fact enterprise must allege present facts which demonstrate that the enterprise is ongoing, with a formal or informal structure, and functions as a continuing unit. 5/1/13 Order at 9-10 (citing Odom, 486 F.3d at 552). In addition, the role of each party-defendant must be alleged. Id. None of these facts are alleged in Plaintiff's opposition, let alone his FAC. Thus, irrespective of Plaintiff's failure to allege a pattern of racketeering activity or the collection of an unlawful debt, his § 1962(c) claim fails to allege a plausible enterprise under RICO.

### 4. Leave to Amend

Plaintiff requests leave to amend in the event the Court grants Defendants' motions to dismiss. Where a complaint or claim is dismissed, "[l]eave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." Knappenberger, 566 F.3d at 942; see also Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1298 (9th Cir. 1998) ("Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility . . . or where the amended complaint would also be subject to dismissal . . . .") (internal citations omitted). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1058 (9th Cir. 2011) (internal quotations and citations omitted).

The Court's prior Order dismissing Plaintiff's RICO claims provided him with specific guidance in terms of what he must allege in order to state plausible claims for relief for violations of § 1962(a), (b) and (c). Among other things, the Court articulated the specific requirements for alleging a pattern of racketeering activity as well as a RICO enterprise. Despite having received such guidance, the allegations of Plaintiff's FAC fall woefully short of addressing the deficiencies cited by the Court. The fact that Plaintiff's opposition largely fails to address the particular arguments presented by Defendants in their respective motions to dismiss underscores the futility in permitting Plaintiff another opportunity to amend his pleadings. See Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995)) (holding that a court may properly deny leave to amend "where the movant presents no new . . . and provides no satisfactory explanation for his failure to fully develop his contentions originally."). Plaintiff's request for leave to amend is therefore denied.

### B. STATE LAW CLAIMS

All of Plaintiff's remaining claims are based upon state law. A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); Sanford, 625 F.3d at 561. "[I]n the usual case

in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." <u>Sanford</u>, 625 F.3d at 561(internal quotations omitted). Having now dismissed all federal claims alleged against Defendants, the Court declines to assert supplemental jurisdiction over her remaining claims.  <u>See</u> <u>City of Colton v. Am. Promotional Events, Inc.-West</u>, 614 F.3d 998, 1008 (9th Cir. 2010) (holding that district court acted within its discretion in declining to exercise supplemental jurisdiction after granting summary judgment on all federal claims).

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.  Defendants' motions to dismiss are GRANTED IN PART as to Plaintiff's third, fourth and fifth claims under RICO.  Plaintiff's request for leave to amend said claims is DENIED.

2.  The Court declines to assert supplemental jurisdiction over Plaintiff's remaining state law causes of action which are dismissed without prejudice to presenting said claims in state court action.

3.  The Clerk shall close the file and terminate all pending Docket matters.

IT IS SO ORDERED.

Dated: September 23, 2013

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge